Charles T. Major, J.
This claim was filed pursuant to an enabling act (L. 1956, ch. 892). The claimant alleges that, due to the negligence of the New York State National Guard, and the negligent manner in which claimant was treated and cared for by said National Guard, and by their servants, agents and representatives, namely the personnel of the United States Army and members of the National Guard from other sections of the country, his paralytic polio condition was aggravated, causing him pain, suffering and rendering him permanently disabled.
Claimant joined the New York State National Guard on July 21, 1953. Prior to this, he had worked one night a week as a civilian for the National Guard, examining members and enlistees, on a fee basis. Upon his enlistment, he was ordered to Camp Drum, New York, to participate in a two weeks’ Summer training encampment extending from July 25, 1953 to August 8, 1953. In accordance with such orders, he departed *368 from Buffalo, New York, about 9:00 a.m. on July 25,1953, driving his own private automobile, with permission, to the encampment, arriving there about 3:30 p.m. on the same day. Claimant had then been a member of the National Guard only four days, and had never before been at Camp Drum. He had a headache upon arrival, and Ms illness gradually continued to get worse. The final diagnosis of this sickness was that claimant had paralytic poliomyelitis.
The trial record is replete with acts of negligence both on the part of members of the National Guard and on the part of the United States Regular Army members. These are set forth in the findings of facts and conclusions of law signed and filed herewith. Considering all the facts and circumstances involved in this matter, there is no evidence or indication that claimant was in any way chargeable with contributory negligence.
The State’s chief defense is based on questions of law, namely, on the contentions:
(1) That upon its reception at Camp Drum, the National Guard merged with the Federal forces for the training period, and liability, if any, did not rest with the State of New York.
(2) That negligence causing damage to claimant, if any, was chargeable to the United States First Army, the operator of the hospital and other medical facilities and medical personnel having connection with the claimant.
The court does not agree with these defenses. The court must assume that the Legislature had a reason and acted in good faith to adopt the enabling act. This act limits the liability of the State for the damages caused by the negligence of the State, its officers, agents, servants or employees and/or of the officer or officers, member or members of the New York State National Guard, and without contributory negligence on the part of the claimant.
The United States First Army and the New York State National Guard were at Camp Drum pursuant to sections 21, 22, 62 and 72 of title 32 of the United States Code and sections 181 and 182 of the New York State Military Law.
Certain hospital units and physicians of the First Army were stationed at tMs camp throughout the Summer, to lend aid, including medical assistance and hospital operation, to the various units attending such camp for their two weeks ’ training period. This was done with the authorization, consent and approval of the State of New York and of its National Guard. This constituted a joint project. The control of the camp, while the National Guard was present, was the joint responsibility of the National Guard Senior Troop Commander and the Com *369 manding Officer of the United States First Army. The National Guard was not federalized or merged with the United States First Army during this training period, even though they were paid for such period by the Federal Government. (Satcher v. United States, 101 F. Supp. 919; Williams v. United States, 189 F. 2d 607; Dover v. United States, 192 F. 2d 431; Di Cicco v. State of New York, 152 Misc. 541; Gibson v. State of New York, 173 Misc. 893; Lind v. Nebraska Nat. Guard, 144 Neb. 122; Ann. 150 A. L. R. 1449.)
The National Guardsmen were in camp by orders from their commanders and not on their own volition. Therefore, it was the duty of the State to make adequate provisions for their transportation, maintenance and medical care, including hospitalization. The New York State Guard had no dispensaries and hospitals of its own at Camp Drum. It had members who were doctors, and had some medical men known as medical officers, to whom claimant could have been referred. Claimant had to submit to the treatment of . the person to whom he was directed. He had no choice. The subjection and placement of National Guard members under partial control of the United States First Army, and the designation and/or acceptance by the State, through its National Guard, of the United States First Army’s Medical Corps and facilities, including hospitalization at Camp Drum or at the Sampson Air Force Hospital at Geneva, New York, creates the relationship of agency within the purview of the enabling act authorizing the filing of this claim. Likewise, the rule of respondeat superior is applicable to the physicians and medical personnel at such camps and hospitals, since the distinction between administrative and medical acts has been abrogated. (Becker v. City of New York, 2 N Y 2d 226; Bing v. Thunig, 2 N Y 2d 656.) The court has indicated and found many acts of negligence in the findings of fact submitted by the claimant — some trivial and some grievous, but all together substantially establishing a period of time wherein claimant suffered from acts of negligence on the part of both the State and the members of the United States First Army. The first acts of negligence were committed by members of claimant’s National Guard unit. The State of New York is, therefore, the original tort-feasor. The State of New York has submitted no proposed findings of fact.
Claimant does not charge the State with negligence which caused him to have the disease of poliomyelitis at the beginning. Apparently, he unknowingly had it for several days before joining the National Guard at Camp Drum. He does contend that such negligence aggravated the disease and caused it to extend *370 beyond what would have been normal without the negligence and, as a result caused additional and more extensive injury and damage. Dr. Henry Morelewicz, a witness for claimant, was the only doctor to testify at the trial. Dr. Morelewicz testified that various acts of negligence toward claimant at Camp Drum, en route to and at Sampson Hospital did aggravate claimant’s condition — the poliomyelitis with which claimant was suffering and the residual paralysis.
The State of New York is answerable for damages sustained as a result of the negligent acts related in the findings submitted herewith and resulting in an aggravation of claimant’s illness and/or the expansion and extension of his disability. (Wagner v. Mittendorf, 232 N. Y. 481; Dunham v. Village of Canisteo, 303 N. Y. 498; Owen v. Rochester-Penfield Bus Co., 304 N. Y. 457; McCahill v. New York Transp. Co., 201 N. Y. 221; White v. Matthews, 130 Misc. 301, revd. on other grounds 221 App. Div. 551; 7 Warren, Negligence, pp. 46, 49.)
At the time of his illness at Camp Drum, claimant was 26 years of age. His wife was about the same age, and they now have three children — the youngest was born shortly after claimant became ill. Before his illness, claimant was a strong, well-built man in excellent health. He graduated from the University of Buffalo Medical School, class of 1951, after completing his undergraduate work at Canisius College. He served a year of internship at Mercy Hospital, successfully completed his first year of residency in psychiatry at Edward J. Meyer Memorial Hospital, and was to serve his second and third years of residency with compensation of over $5,000 per year, plus housing for himself and his family. During his illness, treatment and care, he suffered great pain, agony and sickness, and still has some pain and mental distress, and will have in the future, all of which was brought about by his illness. He cannot walk or get around without help, except after being put in a wheel chair. His legs are permanently paralyzed and his disability is permanent.
The various motions and objections made by the State during the trial and upon which decisions were reserved, are denied in accordance with this decision.
The court finds that the claimant is entitled to an award and does hereby award the claimant herein the sum of $140,000.
The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Judgment is directed accordingly.