■ WILLIAM J. CUNNINGHAM, Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 34069.) — Appeal by the State from a judgment of the Court of Claims upon a claim for damages caused by negligence and malpractice; and cross appeal by claimant on the ground of the inadequacy of the award. Claimant was an officer in the medical corps of the National Guard. His claim was filed pursuant to an enabling act. (L. 1956, ch. 892.) The theory of the recovery was, in essence, negligence on the part of military medical personnel in failing promptly to diagnose and treat the disease of poliomyelitis which disabled claimant while on duty at a Summer encampment at Camp Drum; and, in addition, negligence on the part of medical and lay personnel in the treatment and care of claimant, more specifically in failing to relieve him from physical activity and to require his immediate immobilization; with the alleged result of aggravating and increasing the degree of his residual paralysis. Shortly after being commissioned, claimant was ordered to Camp Drum to which he travelled in his own automobile, arriving on July 25, 1953 at about 3:30 P.M., at which time

he had a headache and a pain in his back. He complained of headache and discomfort to other officers that afternoon and evening and to Lieutenant Klug, who was his subordinate officer and his roommate, during the night. In the morning, Lieutenant Klug took him to a dispensary attached to a National Guard unit, arriving at about 7:45 A.M. Claimant was there examined by a physician of the medical corps of the National Guard who found nothing wrong but after some discussion gave claimant a note authorizing his examination at a hospital. Lieutenant Klug then took claimant to the post hospital and left him there. A nurse told claimant that he was at the wrong hospital and arranged his removal to the evacuation hospital. Both the post hospital and the evacuation hospital were United States Army units commanded and staffed by regular army personnel and at no time after leaving the dispensary was claimant in a National Guard establishment or treated by National Guard personnel. He was examined at the evacuation hospital and treated, no positive diagnosis being made but meningitis being suspected. He was put to bed, treated overnight and at noon removed by ambulance to Sampson Air Force Base Hospital, a unit of the United States Air Force. Again a tentative diagnosis of meningitis was made but at about 10:00 P.M. poliomyelitis was correctly diagnosed. It is apparent that claimant contracted the disease prior to the time he commenced his military duties. The award is upon a finding of aggravation of his ultimate or residual disability in that the paralysis of both legs with which claimant was left was greater in degree than would have been the case had poliomyelitis been diagnosed immediately and had claimant been immobilized during the acute phase of the disease. In our view the medical evidence is insufficient to sustain the award. We find no evidence of negligence, nor more than an error of judgment, on the part of any physician concerned. "The rule requiring [a physician] to use his best judgment does not hold him liable for a mere error of judgment, provided he does what he thinks is best after careful examination." (*Pike* v. *Honsinger*, 155 N. Y. 201, 210.) Neither do we find any basis for the findings of negligence on the part of the lay personnel involved. Reverting to the medical proof, it is true that claimant's medical expert said that claimant's physical activities aggravated his residual disability. The cross-examination of the doctor, however, seems quite conclusively to reveal the speculative nature of his opinion. First, after conceding that he could not fix the degree or percentage of the eventual disability attributable to any particular activity or period of activity, he said, "There are many factors here which are beyond the human understanding or endeavor that enter into this situation and, therefore, there's no way of calculating this." Second, he conceded with equal frankness that one of the important factors entering into the eventual disability was "the nature and extent of the virulence of the original virus" and that in claimant's case the particular strain of virus had not been determined. In other testimony of claimant's expert there appears ample reason and justification for delay of a day, or of a day or two, in making a diagnosis, even in the acute phase of the disease, as well as for like delay in prescribing bed rest. In this case claimant was put to bed not many hours after he left his quarters at 7:30 A.M. The doctor said, also, that poliomyelitis sometimes simulates meningitis — which at least two doctors tentatively diagnosed — and it was not shown that meningitis required treatment different from that given claimant. The reasons which lead us to conclude that there was no proof of any negligence during the extended period discussed would apply with even greater force to the much briefer period that elapsed before claimant came under the care of regular army personnel, on July 26 at about noon, according to claimant's testimony, or prior to 9:15 A.M. according to the hospital records. However, since we find

no negligence in any event, we do not reach the State's contention that under existing statutory provisions and military regulations medical treatment was the exclusive function of the regular army and that, neither the State nor the National Guard having any power of selection or of control, the Army and Air Force personnel were not the State's agents, within the purview of the enabling act, nor was the State jointly responsible with them. Judgment reversed, on the law and the facts, and claim dismissed, without costs. Settle order. Bergan, P. J., Coon, Gibson, Herlihy and Reynolds, JJ., concur. [18 Misc 2d 367.]