Benjamin Brenner, J.
The defendant is a treating doctor accused of erroneously informing the plaintiff that her arrested pulmonary tubercular condition had become active and that tuberculosis germs were in her stomach. In effect, plaintiff says that this misinformation and resultant therapy have caused her to suffer from a tuberculosis phobia and likens her situation to that of the psychic injury suffered by the “ cancerophobia ” victim whose recovery against the original wrongdoer encompassed the damaging effects of the information imparted to her by her doctor. (Ferrara v. Galluchio, 5 N Y 2d 16.)
There is little reason to doubt the plaintiff’s testimony that, while she is a highly nervous individual and was always apprehensive about her long standing disease, she has become exceedingly conscious of the possibility of the spread of the tuberculosis germ to her intestines and that her doctor’s statements and treatment have caused her real distress. A verdict was nevertheless directed for the defendant in the light of the overwhelming evidence that the diagnosis of active tuberculosis disclosed by him to the plaintiff and his administration of effective chemotherapy were medically warranted and constituted no deviation from standard medical practice, The doctor has *520 thus met all the tests of skill and learning, method of treatment and acceptable standards for medical care set out in Pike v. Honsinger (155 N. Y. 201).
The doctor’s statement to the plaintiff that the “ germs may have reached her intestines,” though not then medically verified, also presented no fact question for the jury. This, too, being a statement of the well-known fact that the germ could affect the entire body, did not constitute a departure from standard medical practice or present a jury question to determine lack of care or an error of judgment, for, regardless of whether the disease was active or inactive, or whether it had invaded intestinal tissue or not, the administration of the drugs was plainly curative. On all the evidence, the statement clearly was a requisite medical technique to induce plaintiff, then suffering from stomach pains, to undergo the treatment and indeed, though she may have been badly frightened, plaintiff may be alive today because of the very chemotherapy thus administered to her.
It is, of course, now perfectly well established that in mental anguish cases the physical injury or contact principle enunciated in Mitchell v. Rochester Ry. Co. (151 N. Y. 107) is no longer the law. By progressive holdings since Mitchell, exceptions were relied upon, such as almost immediate physical contact (Comstock v. Wilson, 257 N. Y. 231) and slight physical injury without contact (Sawyer v. Dougherty, 286 App. Div. 1061) to support claims for psychic injury. Then came Battalla v. State of New York (10 N Y 2d 237) which abandoned the Mitchell principle altogether, permitting recovery regardless of physical injury or contact. It placed upon the jury the task of saying whether a negligent act may be the proximate cause of psychic injury. Nor did the court hestitate to take that forward step despite the danger of feigned injury or that such damages might be speculative, leaving it to the good judgment of the court and jury to distinguish between true and fictitious claims and to “ look to the quality and genuineness of the proof ”. (Battalla v. State of New York, supra, p. 242.)
Unlike the action at bar, Ferrara v. Galluchio (supra) was not a cause brought directly against the doctor who had alerted the victim as to the possibility of cancer so that the court did not pass on the need to establish the truth or falsity of the diagnostic disclosure. It simply held the original wrongdoer to be responsible for the psychic injury on the well-established legal proposition that such wrongdoer is responsible for all the injurious consequences (Milks v. McIver, 264 N. Y. 267). No case has been brought to my attention which holds a doctor *521 liable for causing fright and a psychic injury brought on by a statement in the course of his diagnosis or treatment.
The reappearance of positive tubercular sputa, based on recognized tests, convinced the defendant doctor that the inactive tubercular condition had become active once more. As plaintiff was suffering from unexplained gastric pains and was again actively tubercular, he informed her, in the light of those findings and the history of her illness, of the possibility that the tuberculosis germs may have invaded the intestines and that this was an added reason why she must embark upon chemotherapy at once. He may have been mistaken and possibly he should have awaited added clinical signs and medical proof but certain it is that if he was in error, it was an understandable error, if not an error of judgment. In any case, he did not report the information to his patient capriciously or without medical foundation nor was his prescription of chemotherapy palpably an improper prescription for her condition or harmful to her, even if the tuberculosis germ had not invaded the intestines.
Doctors are sometimes held legally responsible for their failure to alert patients to the existence of disease (Maertins v. Kaiser Foundation Hosp., 162 Cal. App. 2d 661). Had this defendant failed to fully alert plaintiff he could conceivably have been subjected to censure and suit and thus, on plaintiff’s reasoning, there is jeopardy both for making the disclosure and for withholding it. Were doctors to be made conscious of the possibility of suit for honestly explaining their diagnoses to patients for purpose of swift cure they would, with so hazardous a cloud hanging over them, tend to avoid doing so. What sort of medicine would we then achieve ? The practice of medicine would then become a secretive practice with doctors uncommunicative to patients, delaying therapy and withholding information for fear that frightened patients might turn upon them. Indeed, professionals in other fields would also find advice to clients most hazardous if fright were caused thereby. Think of the plight of a lawyer, sued by a frightened cardiac client when informed of the poor prospects of a lawsuit or of the size of a proposed fee which could be exceeded by the client’s recovery against the lawyer for fright.
Williams v. State of New York (308 N. Y. 548), though preceding both Battalia and Ferrara and though not involving a doctor, is authority for a denial of relief to a psychic injury victim where public policy is involved. The court there reasoned that though plaintiff sustained such injury because of fright occasioned by the presence of an escaped convict, rehabilitation *522 of prisoners was of paramount importance and a necessary risk even if fault or wrongdoing could otherwise be ascribed to the State’s conduct. Here, too, reason and common sense demand that in the interest of public health and safety a doctor who stands in a special relationship to his patient, even if his diagnosis be not fully verified, shall be free to inform his patient of the presence of disease if he needs to alert her to it or to induce her to embark upon safe and healing therapy. It therefore seems to me that a psychic injury suit, based upon fright from medical advice by a diagnosing doctor, should be confined to gross negligence and is not warranted if the information is well founded, not capricious and does not induce harmful therapy.
The claims of the plaintiff that the doctor erroneously interpreted the X rays as evidence of cavity rather than of bronchiectasis and that he made a change of his diagnosis to ‘ ‘ minimal inactivity ’ ’, even if true, have no bearing on the issues and in any event are not proximately related to the psychic or other injury resulting from the chemotherapy. Upon the law and the facts the defendant is entitled to the direction of a verdict in his favor.
The action against the codefendant Jewish Hospital was dismissed for failure of proof of a prima facie case of actionable negligence or malpractice and its counterclaim for hospital services is severed and transferred to the civil court.