[632 NYS2d 845]

TRACY H. LASKOWITZ, Appellant, v CIBA VISION CORPORATION, Defendant, and JOSEPH M. KURTZ, Respondent.

Second Department, October 23, 1995

## APPEARANCES OF COUNSEL

*Greshin, Ziegler & Pruzansky,* Smithtown *(Benjamin Greshin* of counsel), for appellant.

*Kelly, Rode & Kelly,* Mineola *(John D. Kelly, Shawn P. Kelly* and *Ann Willoughby* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMANN, J.

On this appeal we are asked to consider whether the Legislature, by codifying in Public Health Law § 2805-d actions involving medical, dental, or podiatric malpractice based upon a lack of informed consent, repealed the common-law doctrine of informed consent as to health care professionals not expressly included in that statute.

The plaintiff at bar suffered permanent damage to her right eye following her use of extended-wear contact lenses which had been prescribed for her by her optometrist, the defendant Joseph Kurtz. It was the plaintiff's position that the risk of sustaining an injury like hers was known to be increased among users of extended-wear contact lenses, that Kurtz should have advised her of this risk but failed to do so, and that had she known of the risk, she, like any reasonably prudent person, would not have purchased the extended-wear lenses.

In response to Kurtz's motion, the Supreme Court dismissed the plaintiff's fourth cause of action, in which she alleged that her optometrist had not obtained her informed consent before prescribing the extended-wear lenses. The court reasoned that Public Health Law § 2805-d had codified *all* malpractice actions based upon lack of informed consent and that, by its terms, the statute limited such causes of action to physicians, dentists, and podiatrists. Because optometrists were not named in the statute and because optometrists do not practice medicine, the court concluded that no cause of action sounding in lack of informed consent could be asserted against them *(see, e.g., Boothe v Weiss,* 107 AD2d 730; *see also,* Education Law §§ 6521, 7101).

At common law the doctrine of informed consent evolved in the context of personal injury litigation, deriving from a combination of the concepts of assault and battery with those of negligence and malpractice. Normally, like most of tort law, it calls for the application of very general principles of law to very specific fact situations. A problem in informed consent arises when a physician or other therapist obtains a consent to treatment adequate to insulate him from prosecution for criminal assault and from liability in a civil assault or battery action, but when, nonetheless, the patient contends that consent would have been withheld if an adequate disclosure had been made concerning his condition as well as the potential dangers of and alternatives to the proposed procedure or therapy *(see,* Mem of Henry D. Shereff, Bill Jacket, L 1975, ch 476; *see also, Fogal v Genesee Hosp.,* 41 AD2d 468, 473-474). That liability may lie for failure to obtain a patient's informed consent was acknowledged by the Court of Appeals in 1967 in *Fiorentino v Wenger* (19 NY2d 407; *see also, Flores v Flushing Hosp. & Med. Ctr.,* 109 AD2d 198; *Murriello v Crapotta,* 51 AD2d 381; *Di Rosse v Wein,* 24 AD2d 510; *Petterson v Lynch,* 59 Misc 2d 469).

As outlined in the Memorandum of Henry D. Shereff (Bill Jacket, L 1975, ch 476) a cause of action for lack of informed consent, as it has evolved in the case law, incorporates the following principles:

(1) In general, every person has a right to accept or reject *any* proposed therapy *(see, Schloendorff v Society of N. Y. Hosp.,* 211 NY 125; *see also, Matter of Storar,* 52 NY2d 363, *cert denied sub nom. Storar v Storar,* 454 US 858).

(2) Each patient has a right to receive, and each therapist (directly or through an agent) has a concomitant duty to present, in a form comprehensible to a layman of average intelligence, such information as is or should be known to the therapist, which a reasonable person would require to form a judgment as to whether to accept or reject the proposed therapy *(see, e.g., Canterbury v Spence,* 464 F2d 772, *cert denied* 409 US 1064; *Fogal v Genesee Hosp., supra; Cobbs v Grant,* 8 Cal 3d 229, 502 P2d 1; *see also,* Karchmer, *Informed Consent: A Plaintiff's Medical Malpractice "Wonder Drug",* 31 Mo L Rev 29, 41). The information communicated to the patient should include, as an irreducible minimum: diagnosis, prognosis without the proposed therapy, prognosis with the proposed therapy, significant risks and significant side effects of the proposed therapy, and alternatives available, if any.

(3) There is some traditional authority for the proposition that a therapist should have the right to withhold from a patient such information as, in the reasonable opinion of the therapist, would be injurious to the patient's mental or physical health *(see, e.g., Ferrara v Galluchio,* 5 NY2d 16; *Kraus v Spielberg,* 37 Misc 2d 519).

(4) There is also authority for the proposition that a patient has a right *not* to know. In recognition of this, any patient may waive in writing his or her right to receive any or all information *(see, Cobbs v Grant, supra; Putensen v Clay Adams, Inc.,* 12 Cal App 3d 1062, 91 Cal Rptr 319).

(5) Liability for lack of informed consent should be based upon damages suffered by the patient which are proximately caused by therapy that a reasonable person would have rejected had the therapist met the proper standards of disclosure. In other words, no therapist should be subject to absolute liability merely for failure to disclose—although failure to obtain any consent, express or implied, in the absence of an emergency, may still subject a therapist to absolute liability for battery. Conversely, the requirement of informed consent may not be construed to create a warranty of the accuracy or completeness of the therapist's diagnosis or prognosis *(see, e.g., Pike v Honsinger,* 155 NY 201; *Cunningham v State of New York,* 10 AD2d 751, *affd* 11 NY2d 808; *Stone v Goodman,* 241 App Div 290; *see also,* Mem of Henry D. Shereff, Bill Jacket, L 1975, ch 476, at 4-7).

"Malpractice" is defined in Black's Law Dictionary (864 [5th ed 1979]) as the "[f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services or to those entitled to rely upon them." All of the 21 professions listed in title VIII of the Education Law are held to *comparable standards of competence (compare, e.g.,* article 133 covering dentists, with the virtually identical article 143 covering optometrists); and all are subject to claims of malpractice if and when they fall below such standards. In addition, malpractice based upon a theory of inadequate informed consent is both legally and logically cognizable in any of these licensed professions—although some professions by their natures are more susceptible than others to charges of malpractice, as well as to findings that lack of informed consent could proximately cause a plaintiff's injuries. Further-

more, it is true that certain occupations have more effective lobbying networks than others, and from time to time this disparity in influence has resulted in a greater measure of protection being accorded to some professions than to others.

In the early 1970's malpractice insurance premiums in New York State doubled and were threatening to triple. Indeed, there was even a danger that as of July 1, 1975, no malpractice insurance would be available within the State *(see, e.g.,* 1 Bard and Marano, New York Medical Malpractice, Informed Consent, § 2.1 [1994]). In order to alleviate this malpractice insurance crisis and to rescue health care services from the perceived burdens of malpractice litigation, the Legislature reviewed various proposals, such as eliminating the doctrine of res ipsa loquitur from medical malpractice actions, shortening the Statute of Limitations for malpractice actions, revising judicial procedures for processing malpractice cases, imposing limits on malpractice awards and/or on the fees of plaintiffs' attorneys, and placing novel restrictions on the doctrine of informed consent.

In 1975 and ensuing years, various provisions were enacted and others were amended to implement some of these suggestions with respect to the medical profession *(see,* L 1975, ch 109) and, subsequently, with respect to dentists *(see,* L 1985, ch 760) and podiatrists *(see,* L 1986, ch 485). These provisions included: CPLR 208 (restricted Statutes of Limitation in cases of infancy or disability in medical malpractice actions), CPLR 214 (6) and 214-a (shortened to 2½ years the Statute of Limitations for malpractice actions), CPLR 3017 (c) (demand for relief not to state the amount of damages in a medical or dental malpractice action), CPLR 3103 (scope of disclosure), CPLR 3403 (a) (5) (trial preferences), CPLR 4111 (itemized verdicts required in malpractice actions), CPLR 4213 (itemized decision mandated following malpractice trial), CPLR 4401-a (expert testimony required to prove a lack of informed consent against a doctor), CPLR 4545 (malpractice judgments to be reduced by plaintiff's collateral sources of income or indemnification), CPLR 5031 (periodic/structured payment of malpractice judgments), CPLR 5037 (settlement), and CPLR 8303-a (recovery costs and attorney's fees in frivolous malpractice actions). Also tailored to assist the medical, dental, and podiatric professions in malpractice litigation were Judiciary Law § 474-a (limitations on contingency fees for plaintiffs' attorneys), as well as Public Health Law §§ 2805-d (informed consent), 2805-j (malpractice prevention program), and 2805-k

(investigation of physicians, dentists, and podiatrists prior to granting or renewing privileges).

Public Health Law § 2805-d, as its title suggests, imposes a *limitation* on causes of action sounding in lack of informed consent when they are brought against doctors, dentists, and podiatrists. After defining "[l]ack of informed consent" as "the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical, dental or podiatric practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation" (Public Health Law § 2805-d [1]), the statute goes on to limit the right of action against doctors, dentists and podiatrists to "those cases involving either (a) non-emergency treatment, procedure or surgery, or (b) a diagnostic procedure which involved invasion or disruption of the integrity of the body" (Public Health Law § 2805-d [2]). As a further limitation on the cause of action, the plaintiff must establish both that "a reasonably prudent person in the patient's position would not have undergone the treatment or diagnosis if he had been fully informed," *and* that "the lack of informed consent is a proximate cause of the injury or condition for which recovery is sought" (Public Health Law § 2805-d [3]). Finally, Public Health Law § 2805-d (4) gives doctors, dentists, and podiatrists four defenses against an action based on a failure to obtain a patient's informed consent, viz.: (a) that the risk is too commonly known to warrant disclosure, (b) that the patient assured the practitioner that he wanted the procedure despite the risks, or that he did not want to be given the information to which he was entitled, (c) that consent by or on behalf of the patient was not reasonably possible, or (d) that the practitioner reasonably limited the information disclosed to the patient because he "reasonably believed that the manner and extent of such disclosure could reasonably be expected to adversely and substantially affect the patient's condition" (Public Health Law § 2805-d [4] [d]).

It does not appear from Public Health Law § 2805-d, or from any of the other laws listed above that have been enacted to benefit medical, dental, and podiatric practitioners, that the limitations and defenses they provide to physicians, dentists, and podiatrists are available to other professions not named therein, even though 18 other health care professions are similarly licensed under the Education Law and are subject to

claims of malpractice as well as to charges of lack of informed consent. It also does not appear that in codifying a claim sounding in lack of informed consent as to physicians, dentists, and podiatrists, the Legislature intended to abolish, sub silentio, that cause of action with respect to the remaining 18 health care professions. Indeed, it is illogical to suppose that the Legislature would go to so much trouble to benefit physicians, dentists, and podiatrists, but would confer on optometrists, for example, the far greater benefit of altogether eliminating the lack of informed consent cause of action as to them by the simple expedient of not mentioning them in the legislation. Rather, it would appear that optometrists and the other health care professions not named in Public Health Law § 2805-d remain bound by their traditional, common-law duty to obtain a patient's informed consent *(compare, e.g., Dodes v North Shore Univ. Hosp.,* 149 AD2d 455).

Accordingly, the order must be reversed insofar as appealed from, the branch of the cross motion which was to dismiss the plaintiff's fourth cause of action must be denied, and the fourth cause of action is reinstated.

PIZZUTO, J. P. (concurring). I concur in the conclusion that optometrists and other health care professionals not named in Public Health Law § 2805-d remain bound by their traditional common-law duty to obtain a patient's informed consent.

FLORIO, J., concurs with FRIEDMANN, J.; PIZZUTO, J. P., and HART, J., concur in a separate opinion by PIZZUTO, J. P.

Ordered that the order is reversed insofar as appealed from, with costs, the branch of the cross motion which was to dismiss the plaintiff's fourth cause of action is denied, and the fourth cause of action is reinstated.