FAYE MURRIELLO, Appellant, v JOSEPH CRAPOTTA, Respondent, et al., Defendant.

Second Department, April 5, 1976

*William Vabnick* and *Louis Dubin* for appellant.

COHALAN, J. Plaintiff, who sues to recover damages for personal injuries, underwent surgery for the removal of a cataract from her left eye on October 31, 1973. Prior thereto, and on October 25, 1973, a cataract had been surgically removed from her right eye. Both operations were performed by Dr. Crapotta, one of the defendants. Suit against the doctor was commenced on June 9, 1975, more than 19 months after

the surgery of October 31, 1973. The plaintiff's complaint sets forth three causes of action against the doctor and a fourth against the hopsital. The causes of action asserted against the doctor are based upon (1) lack of informed consent, (2) negligence and (3) malpractice. The action against the hospital is predicated upon negligence.

In her first cause of action plaintiff asserts that, had Dr. Crapotta properly informed her of the dangers, risks and consequences of the surgery to her left eye, she would not have consented thereto. The issue before us is whether the first cause of action, based upon lack of informed consent, is subject to a one-year Statute of Limitations pursuant to CPLR 215 (subd 3).

Special Term, in citing *Cox v Stretton* (77 Misc 2d 155), held that an action based upon a lack of informed consent was an "offshoot of the law of assault and battery." We disagree.

This court recently reiterated the rule that a patient has the right to determine what shall be done with his body and that, under such right, a physician is obligated to make "reasonable disclosure of the available choices and the potential dangers, and the test of such reasonableness is for the jury to decide" *(Zeleznik v Jewish Chronic Disease Hosp.,* 47 AD2d 199, 205).

Furthermore, we adopt the views as analyzed by the court in *Canterbury v Spence* (464 F2d 772, 787, cert den 409 US 1064), that: "Consonantly with orthodox negligence doctrine, the physician's liability for nondisclosure is to be determined on the basis of foresight, not hindsight; no less than any other aspect of negligence, the issue on nondisclosure must be approached from the viewpoint of the reasonableness of the physician's divulgence in terms of what he knows or should know to be the patient's informational needs. If, but only if, the fact-finder can say that the physician's communication was unreasonably inadequate is an imposition of liability legally or morally justified."

Such analysis of a patient's right and a doctor's obligation to divulge information reasonably is a test more related to negligence and/or malpractice than to assault and/or battery. Intent to do injury is an essential element in an assault and battery action. The plaintiff herein makes no such allegation. Where, however, the patient is advised as to the nature and extent of the operation, but is not adequately apprised of the risks involved, the cause of action is in malpractice.

Actions based upon negligence and/or malpractice are governed by CPLR 214 and must be commenced within three years. Effective as of July 1, 1975, actions in medical malpractice are governed by CPLR 214-a, a statute which is not applicable in the instant case.

Since Judge CARDOZO's decision in 1914 in *Schloendorff v Society of N. Y. Hosp.* (211 NY 125), the courts have sustained the thesis that one suing a doctor and/or hospital for medical treatment or surgery without the patient's consent is entitled to treat such medical intervention as an assault, for which the wrongdoer is liable in damages. In *Schloendorff,* the patient notified her physician that surgery was not to be performed under any circumstances without her consent. Her instructions were nevertheless disregarded and such violation was held by the court to have constituted a trespass upon her body and the basis for an action in assault. There is a vast difference, however, between a breach of a professional duty, as alleged at bar, and a breach of a patient's instructions not to have surgical intervention and/or a specified course of medical treatment, as in *Schloendorff (supra).*

The issue now before us was also raised in the *Canterbury* case, in which it was stated (464 F2d, at p 793): "We now confront the question whether appellant's suit was barred, wholly or partly, by the statute of limitations. The statutory periods relevant to this inquiry are one year for battery actions and three years for those charging negligence. * * * It is evident, however, that appellant had much more at stake. His interest in bodily integrity commanded protection, not only against an intentional invasion by an unauthorized operation but also against a negligent invasion by his physician's dereliction of duty to adequately disclose. Appellant has asserted and litigated a violation of that duty throughout the case. That claim, like the others, was governed by the three-year period of limitation applicable to negligence actions".

A breach by a doctor of his professional duty to properly inform his patient is more akin to malpractice, even though the uninformed consent might lead to the commission of a technical assault and battery, for which the Legislature has fixed a one-year Statute of Limitations (see *Bruse v Brickner,* 78 Misc 2d 999).

In passing, it should be noted that our 1975 Legislature enacted (L 1975, ch 109) CPLR 4401-a and section 2805-d of the Public Health Law. Although these statutes are inapplica-

ble to this case, they represent the trend of current thought. A reading of both statutes indicates that an action based upon lack of informed consent is to be considered as in the realm of a malpractice action, and is thus governed by the three-year Statute of Limitations.

HOPKINS, Acting P. J., DAMIANI, CHRIST and TITONE, JJ., concur.

Order of the Supreme Court, Queens County, dated October 15, 1975, reversed, with $50 costs and disbursements, and motion to strike the affirmative defense of Statute of Limitations granted.