OPINION OF THE COURT
Bentley Kassal, J.
ISSUE
Which of the several participants in a medical operation have the duty to obtain a patient’s informed consent? The resolution of this question will determine the defendants’ motions to dismiss various causes of action prior to submission to the jury.
FACTS
In this medical malpractice action, the plaintiff sued many parties, including the hospital, his personal treating physician, who is an internist, the chief surgeon, who is a private attending cardiac surgeon, and his assistant surgeon, and a private consulting cardiologist, all for damages for injuries *604 resulting from an operation, based, inter alla, upon a claim of lack of informed consent. (No claim is made against the anesthesiologist.)
The operation was recommended by the personal treating physician, as well as the chief surgeon who actually did perform the operation. The surgeon had obtained a signed statement from the patient on a printed hospital form, indicating the patient’s consent to the operation by the surgeon as well as his assisants. The assistant surgeon, called in by the chief surgeon, neither proposed the operation to the patient nor obtained his consent. Similarly, the consultant, who was brought in by the private attending physician, examined plaintiff and the records but reported his findings, together with his concurring recommendation that the operation be performed, only to the private attending physician.
In regard to the cause of action for lack of informed consent against the hospital, this is based on the claim that (1) the hospital had the independent responsibility to inform the patient of the operation and obtain his consent and (2) that the hospital is vicariously liable because employees of the hospital did participate in the operation, including the assistant surgeon, who was also a part-time employee on the hospital’s paid staff, and other regular hospital personnel, including residents, interns, nurses, etc.
ANALYSIS OF LIABILITY BASED UPON INFORMED CONSENT
Two theories of liability have developed upon which to premise the responsibility of a physician for failing to properly inform a patient of the risks of an operation. In the first theory, the failure to provide sufficient information vitiated any consent obtained from the patient, thereby creating a nonconsensual touching of the patient’s body which was analogized to the common-law tort of assault and battery. (See, generally, Schloendorff v Society of N. Y. Hosp., 211 NY 125; Darrah v Kite, 32 AD2d 208; Fogal v Genesee Hosp., 41 AD2d 468.) However, more recently, the trend has been toward adoption of a standard applied in other jurisdictions which considers the failure to properly inform the patients of the risks of the operation to be *605 negligence, a lack of due care, within the general principles of professional malpractice. (Dries v Gregor, 72 AD2d 231; Murriello v Crapotta, 51 AD2d 381.)
Under either theory, the duty to inform the patient must be circumscribed within reasonable limits:
(1) Applying the assault and battery theory, only a party actually touching the body of the patient or directing such touching should be responsible. Nor should touching, alone, warrant liability. In this case, as in most medical operations, many participants touched the patient’s body during the course of the operative procedure, ranging from the chief surgeon, down to various and numerous assistants and nurses, in all, 10 people actively involved in the room at the time of the operation. It cannot be seriously contended that each participant has a duty to inform the patient of the risks, prior to obtaining consent to the procedure.
(2) Applying the malpractice theory of informed consent, it is clear that each participant in the operation has an obligation to use due care in performing his part of the treatment, but, absent some other relationship, no participant is responsible for the treatment provided by the others.
Similarly, while a participant may be responsible to the patient to explain the particular risks of his phase of the treatment, for example, surgery or anesthesia, it does not automatically follow that he has an obligation to inform the patient of the risks of another participant’s treatment.
The most appropriate way to examine this question is to start with the usual relationship between the physician and his patient. A patient’s personal physician bears the responsibility to assure the welfare of his patient in all phases of his treatment. Such treatment must, of necessity, include diagnosis and the prescription of a course of treatment by others, such as specialists. To the degree that the physician provides such treatment directly, he obviously bears a duty to advise his patients of the risk. Further, if he refers his patient to another physician and retains a degree of participation, by way of control, consultation or otherwise, his responsibility continues to properly advise his patients with respect to the treatment to be performed by the referred *606 physician (cf. Graddy v New York Med. Coll., 19 AD2d 426, affd 13 NY2d 1175). On the same basis, once the patient is referred to another physician for treatment, the second physician also has a duty to inform the patient.
DECISION
Addressing this case, there are numerous parties whom the plaintiff seeks to hold liable for lack of informed consent, who have no such direct relationship to the patient. They are the assisting surgeon, called in to the operation by the chief surgeon and ahswerable to him; the consultant cardiologist, brought in by the treating physician as an advisor only to the medical practitioners, never to the patient himself; finally, the hospital employees, acting directly under the supervision and control of the chief surgeon in the performance of the operation, not, in any real Sense, performing independent treatment.
A. Hospital
As has been observed by our Court of Appeals, the relationship between the physician and his patient “is always one of great delicacy. And it is perhaps the most delicate matter, often with fluctuating indications, from time to time with the same patient, whether a physician should advise the patient (or his family), more or less, about a proposed procedure, the gruesome details, and the available alternatives. Such a decision is particularly one calling for the exercise of medical judgment. * * * In the exercise of that discretion, involving as it does grave risks to the patient, a third party should not ordinarily meddle” (Fiorentino v Wenger, 19 NY2d 407, 415-416).
This presents a different perspective from the point of view of the hospital staff since, unless they have strong reason to know that a procedure proposed by a physician is contra-indicated by normal practice and that ordinary care requires inquiry into the correctness of the proposed treatment, the primary duty of such staff is to follow the physician’s orders. (Toth v Community Hosp. at Glen Cove, 22 NY2d 255, 265.) Any other rule is inherently impossible under the circumstances. “Moreover, and for a different *607 reason, policy militates against imposing liability upon the hospital. For to do so would tend to discourage hospitals from permitting physicians to use their facilities to perform novel medical procedures, or would induce hospitals to discourage patients from undergoing them.” (Fiorentino v Wenger, supra, p 416.)
B. Consulting Physician
Similarly, the primary duty of a consulting specialist is to advise and make recommendations to the treating physician himself who may, then, with full knowledge of the patient’s history and other conditions, make the ultimate decision as to the scope of the information that should be given to the patient. Conceivably, this rule might be otherwise if the consulting physician were called in directly by the patient for a “second opinion”, which is not the case at bar.
Thus, as a practical matter, lines of distinction must be drawn. It would not be pragmatic or logical, and indeed it would probably be self-defeating, to require that all 10 people present here in the operating room, individually inform the plaintiff of the risks of the operation and obtain his individual consent to their participation. In practice, although the chief surgeon may have been selected well in advance of the operation, in many instances, the rest of his team may be organized a short time prior to the operation or, possibly, even after the patient had been placed under anesthesia and be incapable of receiving the information or giving the consent.
Under all of these circumstances, I find that the only parties charged with the duty to provide the patient with information and obtain his knowing consent are the treating physician and the chief surgeon.
Accordingly, the claims against all other defendants, based upon the doctrine of lack of informed consent, are dismissed.