Stephen J. HARBULAK,
Plaintiff-Appellee,

v.

COUNTY OF SUFFOLK,
Defendant-Appellant.

No. 1276, Docket 80–9152.

United States Court of Appeals,
Second Circuit.

Argued April 24, 1981.

Decided July 15, 1981.

Stephen J. Harbulak, pro se.

Erick F. Larsen, Asst. County Atty., Hauppauge, N. Y. (David J. Gilmartin, Suffolk County Atty., Hauppauge, N. Y., of counsel), for defendant-appellant.

Before LUMBARD and OAKES, Circuit Judges, and POLLACK,* District Judge.

OAKES, Circuit Judge:

This appeal is by the defendant, the County of Suffolk, which seeks attorney's fees in connection with the dismissal of a civil rights action brought against it by plaintiff Stephen J. Harbulak. The United States District Court for the Eastern District of New York, Eugene H. Nickerson, Judge, in granting summary judgment for the County, held that the action was not "totally without foundation" and declined to consider awarding to the County attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976.[1] In our view, the civil rights action brought under 42 U.S.C. § 1983 was wholly frivolous in light of precedents in this circuit and elsewhere. We therefore reverse and hold that it was an abuse of discretion to deny an award of attorney's fees to the defendant.

The facts may be stated very simply. While driving a friend's car in the County of Suffolk in New York, Harbulak was stopped for speeding by police officer John McDermott, of the County's Highway Patrol Bureau, who was on assignment with a team radar patrol. The officer approached Harbulak's vehicle and requested his operator's license, vehicle registration, and proof of insurance. Harbulak did produce his license, but could not immediately locate the vehicle registration or proof of insurance. Officer McDermott then prepared three summonses, one for speeding and one each for driving an uninsured, and for driving an unregistered, vehicle. Harbulak accepted the summons for speeding, but refused to accept the other two. Officer McDermott thereupon reached through the open window of the car Harbulak was driving, across Harbulak's body, and deposited the two summonses on the car's dashboard. There was no allegation that McDermott ever physically touched Harbulak or that Harbulak was in apprehension of being touched, but Harbulak did claim that he "recoiled" in the seat of the AMC Pacer he was driving and that the officer "entered the vehicle" by leaning in to put the summonses on the right side of the dashboard. The officer went back to his vehicle and continued his duties without at any time being abusive, insulting, or otherwise straying from the straightforward performance of his job despite the fact that, at least according to the officer, Harbulak was argumentative and uncooperative, demanded several times to be arrested, and, when the summonses were placed on the dashboard, complained that the officer had violated Harbulak's air space.

Harbulak filed a complaint under section 1983, with subject matter jurisdiction based on 28 U.S.C. § 1331, against the County but not against Officer McDermott, alleging that the officer "without invitation . . . enter[ed] the vehicle" that Harbulak was driving. The complaint sought a judgment that the County "deprive[d] plaintiff of his rights and/or privileges as provided in 42 U.S.C. [§] 1983," and an award of $25,000 in damages. After the parties had submitted to the court the County's request for admissions, Harbulak's responses to the County's request, affidavits, and statements filed pursuant to the Eastern District's Local Rule 9(g), Judge Nickerson granted summary judgment in favor of the County. The memorandum and order dismissing the complaint held that even assuming that all of Harbulak's allegations were true, and that Officer McDermott unnecessarily invaded Harbulak's "space," such an invasion did not rise to the level of a constitutional violation because Harbulak's " 'right' not to be forced to lean backward when an officer is validly serving a traffic information" was not so "fundamental" or "implicit in the

---

* Of the Southern District of New York, sitting by designation.

1. The Civil Rights Attorney's Fees Awards Act of 1976 amended 42 U.S.C. § 1988 to provide in pertinent part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

concept of ordered liberty" as to be a constitutionally protected privacy right, *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).

With respect to the County's application for an award of attorney's fees under the 1976 Act,[2] the lower court referred to the Supreme Court opinion in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). In that case, the Supreme Court held under a similar fees statute that the district court may in its discretion award attorney's fees to a prevailing defendant in a proceeding such as the one here if the action was "frivolous, unreasonable, or without foundation," or "the plaintiff continued to litigate after it clearly became so," even though not brought in bad faith, *id.* at 421–22, 98 S.Ct. at 700–701; see *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 178–79, 66 L.Ed.2d 163 (1980) (applying same standard under the 1976 Act in a section 1983 case). But the district court in the case at bar declined to exercise this discretion on the ground that "[b]ecause of the lack of precedent contrary to plaintiff's claim as well as the amorphous nature of the developing body of law surrounding an individual's constitutional right to privacy, it can not be said that plaintiff's claim is totally without foundation." This appeal ensued.

■ It is abundantly clear that the claim filed by Harbulak, a lawyer representing himself, was not meritorious. He argues that his action was based upon a violation of his right to privacy, and that the right to privacy that was violated is one of four forms of that right recognized in tort law, *Birnbaum v. United States*, 436 F.Supp. 967, 976–77 (E.D.N.Y.1977) (quoting Restatement (Second) of Torts § 652A (1977)), *modified*, 588 F.2d 319 (2d Cir. 1978). He contends that the privacy interest Officer McDermott invaded is the right to be free from "unreasonable intrusion upon the seclusion of another," Restatement (Second) of Torts § 652A (1977). And he quotes the Third Circuit in support of the general proposition that "the full meas-ure of the constitutional protection of the right to privacy has not yet been delineated," *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577 (3d Cir. 1980). To be sure, "[t]he manifold nature of what is loosely termed 'the right to privacy' is well established," *Birnbaum*, 588 F.2d at 323, and the proscription against intrusion upon another's seclusion has been applied in a variety of state law and constitutional contexts, catalogued by this court in *Birnbaum* as including the opening of private and personal mail, eavesdropping, the use of a stomach pump to extract evidence, and the invasion of marital privacy and privacy in conversation, 588 F.2d at 323–25. However, we think it is absurd to argue that the right against intrusion might protect an individual from an event such as this routine service of a traffic summons by a law enforcement officer upon a driver who was sitting in his car and who had declined to accept the summons.

The tort of invasion of privacy by intrusion involves an invasion, in the words of the Restatement, "upon the solitude or seclusion of another or his private affairs or concerns," Restatement (Second) of Torts § 652B (1977). It must be a "private place" or "a private seclusion that the plaintiff has thrown about his person or affairs" that is intruded upon, *id.* Comment c. In this case Harbulak was driving along a public highway in plain view. He was stopped for speeding, a not uncommon event. His "seclusion" was in no way invaded. Also, there can be no liability for an invasion of privacy by intrusion, as a matter of tort law—much less as a matter of constitutional magnitude—unless the interference with the plaintiff's seclusion is, in the words of the Restatement, "a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object," *id.* Comment d. Here, after all, the officer was fulfilling his duties—a consummation, in a day of apparently increasing lawlessness, devoutly to be

2. See note 1 *supra*.

wished. What "ordinary reasonable man" could be highly offended by an officer's reaching into the car to leave on the dashboard summonses that the driver has already refused to accept? To suggest that he could be is to trivialize the very significant right to privacy that has been developed both by the states and by federal courts, and in this case to go far toward "mak[ing] ... the Fourteenth Amendment a font of tort law," *Paul v. Davis*, 424 U.S. at 701, 96 S.Ct. at 1160, and converting the federal courts "into small-claims tribunals," *Parratt v. Taylor*, —— U.S. ——, —— n.13, 101 S.Ct. 1908, 1922, 68 L.Ed.2d 420 (1981) (Powell, J., concurring). *See generally* Whitman, *Constitutional Torts*, 79 Mich.L.Rev. 5 (1980).

Harbulak's case would have been no stronger if he had claimed either a battery or an assault by the officer. He was not touched by the officer and thus could not have claimed a battery, F. Harper & F. James, 1 The Law of Torts §§ 3.2–.3, at 213–15 (1956), and he does not allege that Officer McDermott intended either a battery or the apprehension thereof so as to constitute an assault, *id.* § 3.5, at 221. True, in opposing the motion for summary judgment, Harbulak claimed that he "recoiled," so it may be that he could have proved he was in apprehension of a battery. But as Harper and James point out, "[t]here is no such thing as a negligent assault," *id.* A *sine qua non* for finding an assault is intention on the part of the actor, Restatement (Second) of Torts § 21 (1965); F. Harper & F. James, *supra* at 221–22; W. Prosser, Torts § 10, at 40–41 (4th ed. 1971). And New York law pertaining to assault and battery does not lead us to any different conclusion. *See, e. g., Flamer v. City of Yonkers*, 309 N.Y. 114, 119, 127 N.E.2d 838, 840 (1955); *Murriello v. Crapotta*, 51 A.D.2d 381, 382, 382 N.Y.S.2d 513, 514 (2d Dep't. 1976); *Jones v. Kent*, 35 A.D.2d 622, 622, 312 N.Y.S.2d 728, 729 (3d Dep't 1970). Thus Harbulak did not claim either of these common law torts. Even if he had, as the leading precedent in this circuit stated, in a prisoners' rights context:

Certainly ... constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery, which makes actionable any intentional and unpermitted contact with the plaintiff's person or anything attached to it and practically identified with it, see Prosser, Torts § 9 (4th ed. 1971); still less is it as extensive as that afforded by the common tort action for assault, redressing "Any act of such a nature as to excite an apprehension of battery," *id.* § 10, at 38.

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (footnote omitted), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *see Hernandez v. Lattimore*, 612 F.2d 61, 67 (2d Cir. 1979); *Santiago v. Yarde*, 487 F.Supp. 52, 54 (S.D.N.Y.1980). *See also Fairchild, Arabatzis & Smith, Inc. v. Sackheim*, 451 F.Supp. 1189, 1192–93 (S.D.N.Y.), *aff'd mem.*, 591 F.2d 1330 (2d Cir. 1978).

We are not, of course, dealing here with either an arrest as in *Bellows v. Dainack*, 555 F.2d 1105 (2d Cir. 1977), or a claim of police brutality as in *Milburn v. Girard*, 455 F.Supp. 283 (E.D.Pa.1978), even though Harbulak seeks to relate this case, as he did in the court below, to alleged "police brutality" in Suffolk County. Here Officer McDermott had declined to make an arrest and was merely serving summonses, which he carefully avoided even dropping into Harbulak's lap. How he could have served the summonses less offensively under the circumstances, it is difficult to conceive.

Whatever claim Harbulak may have had against the police officer, there was no basis whatsoever for a suit against the County, which is a municipal corporation under state law, N.Y. County Law § 3 (McKinney); N.Y.Gen.Mun. Law § 2 (McKinney). The Supreme Court case permitting section 1983 suits against municipalities held that there is no respondeat superior liability on the part of the municipality. Liability may be imposed only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to repre-

sent official policy, inflicts the injury," *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). *See also Turpin v. Mailet,* 579 F.2d 152, 167 (2d Cir.), *vacated and remanded,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978), *reinstated in part and remanded,* 591 F.2d 426 (2d Cir. 1979) (en banc) (per curiam) (permitting an implied cause of action for a municipality's unconstitutional acts, not under a theory of respondeat superior but only when the acts are "part of a concerted plan or pursuant to any departmental policy—express or otherwise"). In this case there was no claim in Harbulak's 9(g) statement opposing summary judgment, much less an allegation in his complaint, that the officer's allegedly unconstitutional acts were part of an official policy or a custom of the County of Suffolk. Thus there simply was no liability on the part of the defendant County of Suffolk.

Harbulak is a lawyer and, therefore, he cannot claim the special consideration which the courts customarily grant to pro se parties, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam). Harbulak is a practicing lawyer who had the means and the knowledge, or at least the ability to obtain the knowledge, to recognize that his claim against the County for Officer McDermott's actions was unreasonable and groundless, if not frivolous. Nevertheless, he continued to litigate it through to the summary judgment entered against him.

Because we disagree with the district court's holding that the claim was not totally without foundation, we must reverse and remand the case with instructions to award an attorney's fee to the County in an amount to be fixed by Judge Nickerson under the Civil Rights Attorney's Fees Awards Act of 1976. Judgment reversed and cause remanded.