*659 OPINION OF THE COURT
Ira Gammerman, J.
In this action plaintiffs seek damages for negligent surgery and for surgery performed without informed consent. On March 2, 1979, plaintiff Bernard Nisenholtz, who had been suffering from ulcerative colitis for more than 10 years, underwent a proctocoloctomy (the removal of his colon and rectum). The surgery was performed by defendants Gelernt, Kreel, and Bauer, although defendant Bauer played a relatively minor role. Following surgery, plaintiff Bernard Nisenholtz became organically impotent and it cannot be seriously disputed that the impotence was the result of either the surgery or postoperative scarring. The surgical team was headed by Dr. Gelernt who himself performed the resection of the rectum in the area of the nervierigentis, the nerve enervating erection in the male.
On January 15, 1979, approximately a month and a half before the surgery, plaintiffs had a consultation with Dr. Gelernt. In the course of the consultation, the subject of impotence as a risk of the procedure was discussed. Dr. Gelernt testified, and the jury found, that he advised plaintiffs that impotence was very unlikely in surgery performed for ulcerative colitis but was a far greater risk in surgery performed for malignancy where tissue in addition to the colon and rectum was removed.
Plaintiffs produced as their expert witness Dr. Arthur Davidson, a board certified general surgeon. Dr. Davidson testified that the advice given by Dr. Gelernt concerning the unlikely risk of impotence following this type óf surgery for ulcerative colitis was an adequate warning. (It should be noted that there was agreement among all physicians who testified at the trial that various studies reveal the incidence of impotence following this type of surgery for ulcerative colitis was statistically 1 to 2%.) Dr. Davidson went on to testify that it would be a departure from appropriate standards of medical practice for the surgeon, in obtaining consent to this procedure, “not to discuss all the possible causes of impotency.” Because of Dr. Davidson’s testimony, the court submitted specific interrogatories to the jury dealing both with the claims advanced by plaintiffs based on negligence and lack of informed consent. The jury found that there was no negligence in the manner in which the surgery was performed and, as indicated above, that Dr. Gelernt’s testimony accurately reflected the discussion had with plaintiffs concerning the risk of impotency.
The jury was further asked the following two questions and was unable to reach agreement with respect to the answer to either:
*660 “Question 5. Would a reasonably prudent doctor, before performing the type of surgery performed on Dr. Nisenholtz, have explained to the patient the different mechanisms by which impotence might result following the type of surgery performed on Dr. Nisenholtz?
“Question 6. Would a reasonably prudent person in Dr. Nisenholtz’s circumstances, having sufficient knowledge of the mechanisms by which impotence might result following surgery of the type performed on March 2, 1979, have consented to such surgery?”
Defendants have now moved for a directed verdict with respect to those qhestions and, therefore, for a dismissal of the complaint based on the jury’s answers to the questions relating to negligence and whether the doctor adequately warned plaintiff with respect to the risk of impotence. The issue for the court, therefore, is whether or not, as a matter of law, Dr. Gelernt discharged his duties to plaintiffs by advising them that the risk of impotence was very unlikely, or did he have the additional duty, as testified to by Dr. Davidson, to advise plaintiff with respect to the various possible causes of impotence, even though plaintiffs made no inquiry concerning those causes.
The doctrine of informed consent is rooted in the basic right of individuals to control their own bodies. As described by Justice Cardozo in Schloendorff v Society of N. Y. Hosp. (211 NY 125, 129 [1914]), “Every human being of adult years and sound mind has a right to determine what shall be done with his own body”. The statutory embodiment of this right is found in the New York Public Health Law § 2805-d (1) which states: “1. Lack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation.” (Emphasis added.)
It is the plaintiffs’ contention that a physician’s mere identification of a risk associated with a medical procedure and the likelihood of its occurrence is insufficient to enable a reasonably prudent patient to make a knowledgeable evaluation of the wisdom of undergoing that procedure. Rather, plaintiffs contend that there exist circumstances under which a physician must do more. Specifically, plaintiffs assert that, in some circumstances, a physician must describe the causes or mechanisms by which such risks would occur. Defendants assert that this court should *661 rule, as a matter of law, that physicians need explain no more than “the risk and the frequency with which it occurs.” With this, the court cannot agree.
Physicians have a duty to provide a reasonable explanation of the available alternatives and potential dangers of a medical procedure. When a plaintiff alleges that such an explanation was not reasonable, this question fs an issue of fact to be determined by a jury. (See, Zeleznik v Jewish Chronic Disease Hosp., 47 AD2d 199 [2d Dept 1975]; Lipsius v White, 91 AD2d 271 [2d Dept 1983].) In assessing the reasonableness of the explanation provided by a physician, the issue is whether, under the facts and circumstances of a given case, the physician’s description of the risks and alternatives to the proposed procedure would enable a reasonably prudent patient to make a knowledgeable evaluation of whether to submit to that procedure (see, Fogal v Genesee Hosp., 41 AD2d 468 [4th Dept 1973]; Zeleznik v Jewish Chronic Disease Hosp., supra; Dries v Gregor, 72 AD2d 231 [4th Dept 1980]).
The issue here is the extent of the explanation which is required to enable a reasonably prudent patient to give informed consent to a surgical procedure. Defendants acknowledge that a physician must describe the risks facing the patient, by which is meant the undesired result of the procedure (in this case, impotence). Defendants further allow that a physician is required to indicate the likelihood of the occurrence of the risk (in this case, “very slight” or “from 1 to 2%”). However, defendants suggest that, as a matter of law, physicians need provide no further information, unless asked to do so by the patient. Such a standard would create an artificial, inflexible, and overly restrictive limit on the information which must be provided to patients. It may be that, in many cases, merely identifying the risks and their likelihood of occurrence would suffice, but there undoubtedly exist many other cases in which a more detailed description of the causes of potential harm would be necessary. Indeed, in the present case, plaintiff introduced expert testimony indicating that precisely such a more detailed explanation should have been provided and 2 of the 6 jurors agreed with this assertion.
The reasons for providing such an explanation are persuasive. Understanding the mechanism by which a potential harm may occur provides a patient with a clearer view of the procedure being recommended, the nature of the risks, and the extent to which the risks are within the control of the physician. Indeed, a prudent patient who was confident in the physician’s skills *662 would quite reasonably want to know whether an undesired result of surgery was beyond the physician’s control or solely dependent upon the physician’s skills. The risks of medical procedures vary depending upon a wide range of characteristics inherent to the patient, the physician, and the procedure. In order to adequately evaluate whether to submit to a procedure a reasonably prudent patient should be able to evaluate the interaction of these inherent characteristics — the “mechanics” by which harm could occur. A “very slight” risk to the general population could become a substantial risk to a somewhat susceptible patient, being treated by a physician of less than average competence or experience, using a procedure with which the physician was unfamiliar. Only through receiving a more thorough explanation of the mechanisms by which a proposed procedure could result in undesired effects may such patients adequately evaluate whether or not to undergo treatment. Thus, it would be unwise, as a matter of law, to hold that a physician need never provide more information than a mere identification of the risk and its likelihood of occurrence.
It may well be that the cases in which more is required of physicians will be rare. However, the determination of the adequacy of a physician’s explanation to enable a patient to give informed consent should properly be determined as a question of fact. This is especially true as in cases such as the one at bar, in which expert medical testimony has been offered to support plaintiffs’ contention that the defendant’s explanation of risks was inadequate to permit the patient to make a knowledgeable evaluation of the proposed surgery. Such explanations need not be lengthy and would be subject to the provision of the Public Health Law which allows a physician to exercise reasonable discretion concerning the extent of such disclosure in instances where the patient’s condition might be adversely and substantially affected (§ 2805-d [4] [d]). However, this court will not hold, as a matter of law, that a mere description of a risk and its proportionate chance of occurrence is sufficient in all circumstances.
DR. JANOWITZ — THE REFERRING PHYSICIAN
Prior to consulting Dr. Gelernt, plaintiff, Bernard Nisenholtz, for a period of approximately 10 years, was under the care of Dr. Henry Janowitz, a noted gastroenterologist. Dr. Janowitz advised his patient that medical treatment was no longer effective and surgery should be seriously considered. It was Dr. Janowitz who referred the patient to Dr. Gelernt. In discussing surgery, Dr. Janowitz did not discuss any of the risks involved.
*663 At the conclusion of plaintiffs’ case, the court dismissed the complaint against Dr. Janowitz. Inasmuch as Dr. Janowitz had not participated in the surgery, he could certainly not be held liable for any departures occurring during that surgery. Further, it is the view of the court that a physician who merely refers a patient to another doctor does not become liable should that second doctor perform surgery without informed consent.
The mere referral of a patient by one physician to another is generally insufficient to create liability on the part of the referring physician. As stated in Graddy v New York Med. Coll. (19 AD2d 426, 429, mot to dismiss opp denied 13 NY2d 1175) “The general rule, synthesized from the authorities in many States on this subject, is that ‘A physician who is unable or unwilling to assume or continue the treatment of a case, and recommends or sends another physician who is not his employee, agent, or partner, is not liable for injuries resulting from the latter’s want of skill or care unless he did not exercise due care in making the recommendation or substitution.’ (70 C.J.S., Physicians and Surgeons, § 54, subd. d, p. 978.)”
Similarly, it is clearly not necessary that every physician or health care provider who becomes involved with a patient obtain informed consent to every medical procedure to which the patient submits. Rather, it is the responsibility of a physician to obtain informed consent to those procedures and treatments which the physician actually prescribes or performs.
Aside from Prooth v Wallsh (105 Misc 2d 603), research has not disclosed other cases in New York which address the question of the responsibility to obtain informed consent by physicians who neither formally order nor actually perform a procedure. Courts in other States appear to have adhered to the rule that a physician’s duty to obtain informed consent from a patient arises only when the physician formally orders or actually performs a procedure or conducts a course of treatment. For example, in Halley v Birbiglia (390 Mass 540, 458 NE2d 710 [1983]), a doctor who examined a child and recommended a test which caused injury to the child was not held liable because he did not formally order the test. The court did indicate that the physician who actually conducted the test and, thus, was “in a position to discuss the procedure * * * and to highlight the risks” (458 NE2d, at p 716) with the child’s parents might be liable for failing to obtain their informed consent. In Berkey v Anderson (1 Cal App 3d 790, 82 Cal Rptr 67 [1969]), the court found that a physician who prescribed a myleogram could be found liable for failing to obtain informed consent when a patient was injured during the performance of the procedure by another physician.
*664 Dr. Janowitz had been Bernard Nisenholtz’s physician for approximately 10 years, during which time he had attempted to treat plaintiff’s condition nonsurgically. When Dr. Janowitz advised his patient that this nonsurgical treatment was no longer effective, he referred the plaintiff to Dr. Gelernt, suggests ing that surgery should be seriously considered. However, Dr. Janowitz neither performed nor recommended the surgery; he merely referred the plaintiff to Dr. Gelernt. Thus, Dr. Janowitz was under no duty to obtain informed consent from the plaintiff. This court disagrees with the interpretation of Graddy (supra), employed in Prooth v Wallsh (supra), as applied to a referring physician. In Graddy (supra, at p 429), the Appellate Division held that “In the absence of some recognized traditional legal relationship such as partnership, master and servant, or agency, between physicians in the treatment of patients, the imposition of liability on one for the negligence of the other has been largely limited to situations of joint action in diagnosis or treatment or some control of the course of treatment of one by the other” (emphasis added). Apparently relying on this holding, the court in Prooth (supra, p 605) held that a'referring physician is liable “if he refers his patient to another physician and retains a degree of participation, by way of control, consultation, or otherwise”. However, it is the opinion of this court that the mere act of referring a patient to another physician is insufficient to create liability on the part of the referring physician to obtain informed consent to treatment rendered by the second physician, even when the referring physician retains a degree of participation by visiting the patient in the hospital as was done by Dr. Janowitz. Under Graddy, such liability will arise only upon joint action by the referring physician and surgebn or some control of the surgeon’s treatment by the referring physician. For liability to arise, the referring physician must do more than retain “a degree of participation,” as described in Prooth. The referring physician should be held liable only when that physician has ordered a procedure or actually participates in the treatment or procedure. Here, Dr. Janowitz neither ordered nor performed the surgery and, therefore, was under no duty to obtain informed consent to that surgery from the plaintiff, Bernard Nisenholtz.
For the reasons indicated above, the motion of defendants Gelernt, Kreel, and Bauer is denied and this matter is placed on the Part 27 Calendar for trial on September 13, 1984.