Dennisse Flores, an Infant, by Jorge Flores, Her Father and Natural Guardian, et al., Appellants, v Flushing Hospital & Medical Center et al., Respondents.

First Department, June 25, 1985

APPEARANCES OF COUNSEL

*Fred R. Profeta, Jr.,* of counsel (*Wiesen, Gurfein & Jenkins,* attorneys), for appellants.

*James M. McLaughlin, Jr.,* of counsel (*Richard C. Mooney & Assoc.,* attorneys), for Flushing Hospital, respondent.

*Norman Bard* of counsel (*Beth J. Goldmacher* and *Herbert G. Lindenbaum* with him on the brief; *Bower & Gardner,* attorneys), for James G. Lione, respondent.

OPINION OF THE COURT

Carro, J.

The 14-year-old plaintiff, by and with her father, sues the hospital and physician who treated her at birth and for a period thereafter for injuries sustained in the first weeks of her life. Only two pounds, eight ounces at birth, she is today a healthy

teen-ager with an above-average I.Q.; however, she is totally blind as a result of retrolental fibroplasia (RLF) disease, which plaintiffs argue was caused by the administration of excessive amounts of oxygen over her first 13 days. The complaint alleges malpractice and lack of informed consent. A jury, upon proper instructions, rejected the assertion of malpractice, and thus, on this appeal, we only address the claim of lack of informed consent.

Up until the mid-1950's it was accepted medical practice to administer quite liberal doses of oxygen to premature infants to prevent death or brain damage. Research of this period ultimately showed, however, that prolonged and high concentrations of oxygen in an incubator (over 50%) led to the certain development of RLF. (*See generally, Burton v Brooklyn Doctors Hosp.,* 88 AD2d 217 [Sullivan, J.].) Thus, by the time of plaintiff's birth, in May of 1970, it was well established that oxygen should only be applied to counteract respiratory problems and cyanosis in premature infants, as exhibited by plaintiff, and then only at relatively low percentage-volumes and for only brief periods.

The proof at trial showed that plaintiff was subjected to concentrations of oxygen between 31-40% over a 13-day period. This proof permitted a finding, based also upon the opinion of plaintiff's expert, that this continuous use of oxygen caused her RLF. However, there was also an abundance of evidence that without any oxygen, plaintiff would have died or suffered brain damage. In answer to one of the threshold questions, whether the oxygen given to plaintiff was administered improperly so as to make out a claim of medical malpractice, the jury found no departure from accepted medical or hospital practice as it existed in May of 1970 by either the hospital or Dr. Lione, the attending pediatrician.

However, the testimony further showed that Dr. Lione never informed plaintiff's parents about the risks of oxygen use nor, specifically, the possibility that blindness might result. Accordingly, neither was there any discussion of the range of percentage-volume and duration of oxygen therapy possible. Given the complexity of factors and outcomes in treating a grossly underweight and premature infant, the issue of lack of informed consent was clearly not reducible to whether, if so informed, the parents would have been forced to choose between death or blindness.

On this issue, the jury was directed to consider whether the infant's "parents were adequately and reasonably informed and

based on that, did they give their consent to the procedure and treatment undertaken by Dr. Lione?" The jury answered "No" to this question.

At this point plaintiff's counsel requested that the jury be directed to assess damages. Instead, and over plaintiff's counsel's objection, the court charged the jury that since they found a lack of informed consent, "[t]he question now is, did that result in [*sic*] proximately result in damages to, or was that the proximate cause of damages to the infant, the lack of informed consent?" The jury answered "no", and a verdict was returned for defendant Lione. Plaintiffs-appellants contend on appeal that the jury had already determined the necessary causal link between the lack of informed consent and the treatment given the infant when the jury replied "No" to the first question on informed consent submitted to them. Plaintiff's argument, however, fails to recognize that there are two separate causation elements in a lack of informed consent action, and, hence, the court was correct in requiring that the jury find a proximate cause element. Nonetheless, we conclude that the court's charge on proximate cause may have confused the jury.

We note preliminarily that whether an action for lack of informed consent is viewed as a malpractice action based on negligence (*Murriello v Crapotta,* 51 AD2d 381 [2d Dept]; *Dries v Gregor,* 72 AD2d 231 [4th Dept]), or as a malpractice action based on common-law principles of assault and battery (*Zimmerman v New York City Health & Hosps. Corp.,* 91 AD2d 290, 293 [1st Dept]; *Darrah v Kite,* 32 AD2d 208, 210-211 [3d Dept]), it is nevertheless a tort action and requires proof of a causation relation between the defendant's disputed conduct and the resulting injury to plaintiff. In an action raising lack of informed consent, there are two separate causation elements: the "but for" and the proximate cause elements.

Upon finding that a doctor has failed to adequately inform the patient of the attendant risks of and alternatives to a medical procedure, the jury must then ascertain whether the treatment would not have occurred "but for" the doctor's failure to inform properly. This "but for" relation is established when the jury concludes that a reasonably prudent person in the patient's position would not, if fully informed, have consented to the treatment. (*Dries v Gregor, supra,* p 236.) This causative element was the subject of the first question posited to the jury on the lack of informed consent cause of action. The jury found in plaintiff's favor.

Once the "but for" relation is established, and it is concluded that the treatment would not have taken place, a second inquiry

is then directed at whether injury in fact resulted from the disputed treatment, for obviously there can be no recovery without actual damages to the plaintiff. This is the proximate cause element. As the court in *Lipsius v White* (91 AD2d 271, 280) noted, a trial court must also instruct the jury to determine whether the treatment in question had the effect of producing plaintiff's injury and whether reasonable men would regard the treatment as the cause of the injury. Simply put, it must be proven both that no fully informed reasonable person would consent to the treatment and that the plaintiff in fact suffered an injury which medically was caused by the treatment.

The trial court, therefore, correctly decided to instruct the jury on the proximate cause element, but the wording of the court's instruction compels us to conclude that the jury may have labored under a mistaken notion as to the nature of that element in this action. The court instructed the jury to determine whether the lack of informed consent proximately resulted in injury to the infant. Unquestionably, it is impossible for a lack of informed consent to cause a physical injury. The parent's lack of knowledge about the risk of the treatment did not cause that risk to materialize. Rather, it is the administration of an unconsented to treatment which may cause injury. Unfortunately, a literal interpretation of the instruction would require the impossible: that the lack of informed consent must proximately cause the blindness. Despite its obviousness to us, we cannot act under the supposition that the jury appreciated the literal impossibility of the instruction or, more importantly, that it knew the proper way to approach the proximate cause issue. Accordingly, we must reverse the jury's verdict on this issue and remand for a new trial.

We also find it noteworthy that Public Health Law § 2805-d (3), which was not in effect when the acts herein occurred but may have been the source of this confusing charge, states the following: "3. For a cause of action * * * [based on lack of informed consent] it must also be established that a reasonably prudent person in the patient's position would not have undergone the treatment or diagnosis if he had been fully informed *and that the lack of informed consent is a proximate cause of the injury or condition for which recovery is sought*" (emphasis supplied). Since the statute has been viewed as merely codifying the common law on informed consent (*Murriello v Crapotta,* 51 AD2d 381, 384; *Cummings v Fondak,* 122 Misc 2d 913, 918), and the statute must be given its plain and intended meaning, it is obvious that the statute advises that proximate cause must be proved in a lack of informed consent cause of action and uninten-

tionally omits stating that that causative element is proved when the operation, treatment or procedure is a proximate cause of the injury of which plaintiff complains. Even the comment to the New York Pattern Jury Instruction to Public Health Law § 2805-d (1 NY PJI2d 191 [Supp]) notes this omission and states the proximate cause issue in these above terms.

One final issue we address, although not briefed by the parties on appeal, is whether the first question posed to the jury on the informed consent issue, which appears on the verdict sheet, may likewise have confused the jury by omitting an essential element of the "but for" component to the causation issue. The verdict sheet directed the jury to determine whether the "parents were adequately and reasonably informed and based on that, did they give their consent to the procedure and treatment undertaken by Dr. Lione?" However, as discussed above, the proper inquiry is whether a reasonably prudent person in the patient's position would, if informed, have consented to the treatment.

We are cognizant of the fact that the court did state the reasonably prudent person standard in its original instructions to the jury. Additionally, we do not mean to suggest that a verdict sheet must contain a full exposition of all pertinent elements of any particular issue before the jury. However, the wording of the question on the verdict sheet may have confused the jury and misled it into examining the "but for" element as a subjective, rather than objective, test. The likelihood that the verdict entered was tainted by this confusion is substantially enhanced by the fact that the full jury instructions were given on May 5, 1983, but it was not until May 18, 1983, that the jury reached this question on the verdict sheet.

Given the complexity in this case of the issue of lack of informed consent and our inability to conclude that the ultimate verdict on this issue was based on a correct application of the relevant legal principles, we reverse and remand for a new trial on this cause of action alone. Accordingly, the judgment entered June 23, 1983, in Supreme Court, Bronx County (Adolph C. Orlando, J.), dismissing the complaint against defendants Flushing Hospital and Dr. James G. Lione, should be modified, on the law and the facts, and in the exercise of our discretion, to the extent of vacating the judgment on the second cause of action in Dr. Lione's favor, remanding the matter for a new trial on that cause alleging lack of informed consent, and the judgment otherwise affirmed, without costs.

SANDLER, J. P., SULLIVAN and MILONAS, JJ., concur.

Judgment, Supreme Court, Bronx County, entered on June 23, 1983, unanimously modified, on the law and the facts, and in the exercise of discretion, to the extent of vacating the judgment on the second cause of action in Dr. Lione's favor, remanding the matter for a new trial on that cause alleging lack of informed consent, and the judgment is otherwise affirmed, without costs and without disbursements.