Uri **TORNHEIM**, Plaintiff,

v.

**Lindsey EASON, in his official capacity as Sheriff of the City of New York, Doreen Spindel a/k/a Doreen Kohn, Saul E. Feder d/b/a Regosin, Edwards, Stone & Feder, Robin C. Marvin, and Stephen J. Fiala, in his official capacity as Clerk and Register of Richmond County, Defendants.**

**No. 04 CIV.6779 CM MDF.**

United States District Court,
S.D. New York.

April 1, 2005.

---

Uri Tornheim, Wesley Hills, NY, pro se.

Paul Allan Goetz, New York City Law Department Off. of the Corporation Counsel, Mbiabah Lisa Ghartey, Office of New York State Attorney General, New York, NY, for Defendants.

## MEMORANDUM DECISION GRANTING SHERIFF EASON'S MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES

MCMAHON, District Judge.

Plaintiff Uri Tornheim and defendant Doreen Spindel divorced in 2001, with a judgment of divorce dated November 20, 2001 (the "Judgment") issued by Justice Yancey of the New York State Supreme Court of Kings County. The complaint Tornheim filed in this Court arose from Spindel's unilateral sale of their marital residence, which she effected pursuant to a procedure specified in the Judgment.

On December 10, 2004, I issued a decision dismissing the complaint as to Spindel and defendants Robin C. Marvin and Saul E. Feder. Familiarity with that decision is presumed. In that decision, I found that Tornheim's complaint was frivolous and directed the dismissed defendants to submit information about such portion of their attorneys' fees as could arguably be attributable to the litigation over the Section 1983 and 1988 claims. Spindel and Feder have submitted this information.

I also directed the Corporation Counsel of the City of New York to make a motion for judgment on the pleadings or for summary judgment with respect to defendant

Sheriff Eason ("Sheriff"). This motion was received December 22, 2004. Tornheim's response was due, and received, on January 7, 2005.[1]

For the reasons discussed below, the Sheriff's motion to dismiss is granted, and the motions for attorneys' fees are granted.

## *Discussion*

### 1. **Sheriff's Motion to Dismiss**

For purposes of analyzing a motion to dismiss, the pleadings should be read in the light most favorable to the non-moving party, and the plaintiff's allegations as to the material facts should be taken as true. *See Albright v. Oliver,* 510 U.S. 266, 267, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir. 1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal under Fed.R.Civ.P. 12(b) is appropriate, therefore, only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

In considering a motion to dismiss, the court generally must limit its analysis "to the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). In addition, the court may consider public records, including a state court's divorce decree, in deciding a motion to dismiss, even if that document was not incorporated in the complaint by reference. *Taylor*

*v. Vermont Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002); *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991); *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998); *see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004).

■ Tornheim alleges that the Sheriff violated his Fourth Amendments rights when he signed the marital residence transfer documents, in accordance with the procedure specified in the Judgment, resulting in the sale of the marital residence. (Comp.¶ 44.) But the Sheriff did nothing improper, so Tornheim has no cognizable claim against him.

The Sheriff is an officer of the court, and, as such, he must execute the court's "mandates." *Liggett v. Pichler,* 142 A.D.2d 206, 209, 534 N.Y.S.2d 973, 976 (1st Dep't 1988); *Enstrom v. City of New York,* 258 A.D. 672, 675, 17 N.Y.S.2d 964, 967 (2d Dep't), *appeal and rearg. denied,* 259 A.D. 832, 19 N.Y.S.2d 1022, *appeal denied,* 283 N.Y. 778, 27 N.E.2d 818 (1940); *see also* N.Y. CLS County Law § 650(1) (a sheriff is required to "perform the duties prescribed by law as an officer of the court"). New York General Construction Law § 28–a defines "mandate" to include, "A writ, process or other written direction, issued pursuant to law ... by a ... judge ... and commending ... an officer ... named or otherwise designated therein, to do ... an act therein specified." In addition, New York CPLR § 2223 states that an "officer to whom a mandate is given to be executed shall ... execute the mandate according to its command ..." Accordingly, when a sheriff relies on a facially valid court order, he is "afforded complete protection from liability ... for any proper

---

**1.** The Declaration by Uri Tornheim in Response to Sheriff Lindsey Eason's Motion to Dismiss ..., dated January 7, 2005, was timely submitted and thus considered by the Court. Tornheim's subsequent submission, a letter dated and received January 10, 2005, was not timely and was therefore not considered.

act done in its execution." *Iovinella v. Sheriff of Schenectady Co.*, 67 A.D.2d 1037, 413 N.Y.S.2d 497 (3d Dep't), *app. denied* 47 N.Y.2d 707, 418 N.Y.S.2d 1025, 391 N.E.2d 1366 (1979).

Tornheim does not allege that the Sheriff wrongfully or erroneously signed the transfer papers. In fact, Tornheim admitted in his complaint that the Sheriff executed the deed and transfer documents "strictly in lieu, and on behalf, of Plaintiff." (Compl. ¶ 27.) Moreover, Tornheim had appealed the Judgment, and the Appellate Division upheld Justice Yancey's verdict. The Judgment, therefore, was "facially valid."

■ A sheriff is not empowered to review a facially valid court order; it is not within his scope of authority to question the legality of the provision in the Judgment. *See Deitz v. Mangano*, 30 N.Y.S.2d 8, 9 (N.Y.Sup.Ct.1941). When a sheriff is presented with a mandate of the court, he is:

> not bound to inquire into the proceeding leading up to the approval and the granting of [the] order, and [he is] justified as a ministerial officer in obeying it according to its terms. To [do] otherwise may ... render[ ] him liable as and for a contempt of court. Nor [does] he [have] the right to presume to act as a court of appellate jurisdiction to review the determination of this court.

*Lang v. Dreyer*, 170 Misc. 207, 210, 9 N.Y.S.2d 970, 973 (N.Y.Sup.1939); *Calabro*

*Construction Corp. v. W.R.B. Holding Corp.*, 48 Misc.2d 918, 921, 266 N.Y.S.2d 170, 174 (N.Y.Sup.1965).

By executing the marital residence transfer documents, the Sheriff merely performed his duty as an officer of the court to effectuate the mandate in the Judgment. The Sheriff was thus bound by law to sign the transfer documents, and is therefore entitled to an absolute quasi-judicial immunity because his actions—undertaken in performance of his official duties—have an integral relationship with the judicial process.[2] *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.1994). Quasi-judicial immunity has been extended to those officials "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush*, 38 F.3d at 847 (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir.), *cert. denied*, 493 U.S. 956, 110 S.Ct. 371, 107 L.Ed.2d 357 (1989)). Those tasks include discretionary acts directed by a judge. *Waits v. McGowan*, 516 F.2d 203, 206 (3d Cir.1975). Therefore, the Sheriff has quasi-judicial immunity since he was merely performing the mandate in the Judgment directing him to sign the transfer documents.[3] The claims against him—brought only in his official capacity—must be dismissed.[4]

### 2. Remaining State Law Claims

As I stated in my Decision of December 10, 2004, since all federal claims have now

---

2. The defense of qualified immunity is unavailable to Sheriff Eason since plaintiff sued him only in his official capacity. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 360, 116 L.Ed.2d 301 (1991).

3. I note that the act of signing the transfer documents in this case probably did not require any discretion, since Spindel merely had to show that Tornheim failed (or refused) to sign the documents—a fact easily obtained by looking at the documents—before the

Sheriff became obligated to sign them himself. As stated above, however, even if it were discretionary, the Sheriff still would not be liable.

4. Since I am dismissing the case as to the Sheriff on the grounds that he acted on facially valid process of the court, I need not reach the Sheriff's second argument based on lack of proof of municipal liability.

been dismissed, I decline to exercise pendent jurisdiction with respect to the remaining Third and Fifth Causes of Action because they are purely state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Therefore, the Third and Fifth Causes of Action are dismissed as well.

### 3. Attorneys' Fees

According to 42 U.S.C. § 1988, a court, in its discretion, may allow the prevailing party reasonable attorneys' fees. The Supreme Court has held that a district court may award attorneys' fees to a prevailing *defendant* only where it finds "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The same standard was applied in *Hughes v. Rowe*, 449 U.S. 5, 15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980), and has been followed in the Second Circuit since. *See Eastway Const. Corp. v. City of New York*, 821 F.2d 121, 123 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Harbulak v. County of Suffolk*, 654 F.2d 194 (2d Cir. 1981); *see also Prate v. Freedman*, 583 F.2d 42 (2d Cir.1978).

In my December 10, 2004 decision, I found that Tornheim's complaint was frivolous. I now further find that this attempt to find a new forum to relitigate claims decided adversely to him in his matrimonial action was unreasonable, completely without foundation, and brought in subjective bad faith. Tornheim has shown me no reason why he should not be taxed with the attorneys' fees that were incurred to defend this frivolous suit. Accordingly, in light of all the circumstances surrounding this troublesome litigation, I grant each moving defendant's motion for attorneys' fees incurred in defending against this utterly frivolous lawsuit.

Spindel seeks $10,430 in attorney's fees. Mr. Sucher, her attorney, affirms (with detailed time records) that he spent approximately 39.6 hours in billable time "in the defense of this action on behalf of" Spindel. (Aff. in Support of Request for Legal Fees for Defendant, Doreen Spindel, dated January 7, 2005, at par. 9 and exhibits). He billed at a rate of $350 per hour for his own time and $175 for the time of his associate, Andrew Shabasson. I find that the amount of time spent is reasonable and the rates are comparable to those charged by others lawyers in this geographic area for this type of work. Therefore, I award Spindel $10,430 in attorneys' fees.[5]

Defendant Feder, represented by Anne Patricia Richter of the firm of McManus, Collura & Richter, P.C., seeks reimbursement for legal fees in an amount of $3,114.40. Ms. Richter billed for 18.32 hours' worth of work in defending against the section 1983 and 1988 claims. *See* Letter from Anne P. Richter to Hon. C. McMahon, dated January 5, 2005. Work was billed at the blended hourly rate of $170.00 and was itemized in .10 hour increments. There is nothing unreasonable in the amount of time spent or the rate

---

5. In the December 10, 2004 decision, I requested that counsel specifically delineate how much time was spent working on the § 1983 claims as opposed to any other claims. Mr. Sucher did not provide this breakdown. However, since the only federal claim asserted by Tornheim against Spindel was the § 1983 claim, and since this formed the basis of Spindel's motion to dismiss and all proceedings with this Court to date (i.e., no state law issues were ever addressed), I find it is proper to charge all of the 39.6 hours to defense of the § 1983 claim.

charged. Accordingly, I award $3,114,40 in attorneys' fees to Feder.

**Instructions to the Clerk of the Court**

The Clerk of the Court is to enter judgment against plaintiff and in favor of defendant Spindel in the amount of $10,430, and in favor of defendant Feder in the amount of $3,114.40. The Clerk shall then close the case. According to this Court's records, there are no pending motions. Should there be any outstanding motions, they are denied as moot.

This constitutes the decision of the Court.